**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 15-cr-02982-BAS-1 |
| Plaintiff, | |
| v. | **ORDER DENYING EMERGENCY MOTION FOR COMPASSIONATE RELEASE (ECF No. 68)** |
| CARLOS FERNANDO DIAZ-DIAZ, | |
| Defendant. | |

On April 11, 2017, this Court sentenced Defendant Carlos Fernando Diaz-Diaz to 24 months in custody on Count One, illegally trafficking in firearms, and 78 months on Count Two, conspiracy to distribute methamphetamine. The sentences were to be served concurrently. (ECF No. 60.) Mr. Diaz-Diaz self-surrendered to begin serving his sentence on May 31, 2017, and has served just over 39 months of his 78-month sentence. (ECF No. 74 at 4.) In late April, Mr. Diaz-Diaz tested positive for COVID-19 while housed at FCI Terminal Island. (ECF No. 68 at 26.) He now seeks compassionate release in light of this positive test. (ECF No. 68 ("Defendant's Motion").) The Government opposes (ECF No. 74 ("Government's Response")), and Defendant replies (ECF No. 75 ("Defendant's Reply")). For the reasons stated below, the Court **DENIES** Mr. Diaz-Diaz's motion.

# I.    BACKGROUND

Mr. Diaz-Diaz was arrested as the result of a wiretap investigation that revealed Mr. Diaz-Diaz's cousin distributed large quantities of methamphetamine and heroin throughout Southern California, assisted by Defendant Diaz-Diaz.  (ECF No. 33 ("PSR") ¶¶ 4–15.) Eventually, Mr. Diaz-Diaz sold methamphetamine and firearms to undercover agents.  (*Id.*) He pled guilty to dealing firearms without a license and conspiracy to distribute methamphetamine.  (ECF Nos. 30–32.)

Despite his young age (28 years at the time), Mr. Diaz-Diaz had generated a fairly lengthy criminal record, much as a juvenile.  (PSR ¶¶ 45–64.)  He was disciplined at North Salinas High School for his Sureno gang associations and warned to stay off campus.  (PSR ¶¶ 45–46.)  And, as a juvenile, there were true findings on allegations that he broke the window of a car with a baseball bat as a "favor" for a friend, drove a stolen vehicle, and held a knife to his pregnant girlfriend's throat saying he would kill her.  (PSR ¶¶ 45–51.) Once he reached adulthood, he was convicted of engaging in a fight, at which time he had a baseball bat in his hands.  (PSR ¶¶ 54–55.)

He also has numerous arrests as a juvenile including battery against a school employee, disturbing the peace, disrupting school activities and carrying a concealed weapon in his vehicle.  (PSR ¶¶ 61–62.)  As an adult, he was arrested for kidnapping and aggravated assault, but prosecution was declined when the prosecution was unable to locate the victims.  (PSR ¶ 63.)  Mr. Diaz-Diaz also was arrested for being a felon in possession of a firearm and possessing a weapon in a drug offense.  (PSR ¶ 64.)

Mr. Diaz-Diaz has a lengthy history of substance abuse including marijuana, crack cocaine and methamphetamine.  (PSR ¶ 88.)  While this case was pending, he remained on pre-trial release, attending drug treatment programs and consistently testing negative. (PSR ¶ 89.)  Nonetheless, Probation found he was a high risk for recidivism "and may pose a risk to the safety of others in the community."  (PSR ¶ 124.)  The Probation Department recommended a sentence of 96 months on Count 2 and 60 months on Count 1, concurrent. (PSR ¶ 127.)  The Government brought a motion under § 5K1.1 and recommended a

reduced sentence.  (ECF No. 54.)  The Court sentenced Mr. Diaz-Diaz to 78 months on Count 2 and 24 months on Count 1, concurrent.  (ECF No. 60.)

Mr. Diaz-Diaz suffers from high blood pressure, hypertension and obesity, with a BMI of 36.5.  (Defendant's Motion, at 27, 34.)  On April 27, 2020, while housed at Terminal Island, he tested positive for COVID-19.  (*Id.* at 26.)  However, on each day from May 1 to May 8, 2020, he was screened for COVID-19 symptoms and showed no fever, cough, shortness of breath, muscle pain, fatigue, sore throat, headache, new loss of taste and smell or chills.  (*Id.* at 41.)

On May 14, 2020, he requested compassionate release from the Warden at FCI Terminal Island.  (Defendant's Motion, at 12.)  The Warden denied that request on June 8, 2020.  (*Id.* at 15.)  There is no evidence that Mr. Diaz-Diaz appealed that denial.

## II.  ANALYSIS

Under 18 U.S.C. § 3582(c)(1)(A), a court may, in certain circumstances, modify or reduce a defendant's term of imprisonment, after he has exhausted his administrative remedies, if "considering the factors set forth in [18 U.S.C.] section 3553(a)," the court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is  consistent with applicable policy statements issued by the Sentencing Commission."  *United States v. Ng Lap Seng*, __F. Supp. 3d__, 2020 WL 2301202, at *7 (S.D.N.Y. 2020).  As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction.  *United States v. Holden*, __ F. Supp. 3d__, 2020 WL 1673440, at *3 (D. Or. 2020).

### A.  Exhaustion

"Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes.  First, it protects administrative agency authority by guaranteeing agencies the 'opportunity to correct [their] own mistakes.'"  *Ng Lap Seng*, 2020 WL 2301202, at *6 (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).  "Second, it promotes efficiency since claims 'generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.'"  *Id.*  This

Court agrees with the vast majority of courts in this circuit that have found such an exhaustion to be mandatory. *See, e.g.*, *United States v. Stanard*, No. CR 16-320-RSM, 2020 WL 1987072, at *4 (W.D. Wash. Apr. 27, 2020); *United States v. Otero*, No. 17-cr-879-JAH, 2020 WL 1912216, at *3 (S.D. Cal. Apr. 20, 2020); *United States v. Allison*, No. CR 16-5207-RBL, 2020 WL 1904047, at *2 (W.D. Wash. Apr. 17, 2020); *United States v. Fuller*, No. CR 17-0324 JLR, 2020 WL 1847751, at *2 (W.D. Wash. Apr. 13, 2020); *United States .v Aguila,* No. 2:16-0046-TLM, 2020 WL 1812159, at *1 (E.D. Cal. Apr. 9, 2020); *United States v. Carver*, No. 4:19-CR-06044-SMJ, 2020 WL 1604968, at *1 (E.D. Wash. Apr. 1, 2020).

Section 3582 provides two alternative routes to exhaustion. In the first, a petitioner files a petition, which is acted on by the Warden, and the petitioner proceeds to continue to fully exhaust his or her administrative remedies by appealing this refusal from the Warden. In the second, the Warden takes no action, 30 days lapse and, because of the Warden's failure to act, the petitioner may proceed without fully exhausting his or her administrative remedies.

In this case, Mr. Diaz-Diaz does not demonstrate that either of these routes has been followed. Although he filed a petition, the Warden did act within 30 days, and Mr. Diaz-Diaz failed to appeal this refusal. Nonetheless, the Government may waive the administrative exhaustion requirement by asking the court to consider the substantive merits of a defendant's motion. *Ng Lap Seng*, at *7. The Government, in its Response, makes it clear that it is waiving this requirement and addressing the substantive issues raised by the Motion. (Government's Response, at 11.) Therefore, the Court turns to the substantive issues.

### B.   Extraordinary and Compelling Reasons

The Government agrees that Mr. Diaz-Diaz has shown extraordinary and compelling reasons for his release. (Government's Response, at 11.) He is housed at Terminal Island which, according to the Bureau of Prisons ("BOP") website, has had 641 inmates test positive for COVID-19, 628 of whom have recovered, and 10 of whom have died, and 23

15cr2982

staff who have tested positive, all of whom have recovered and none of whom have died.
BOP, Covid-19 Cases, http://www.bop.gov/coronavirus (last visited Sept. 1, 2020).  Mr.
Diaz-Diaz documents that he is obese, with a BMI of 36.5, has hypertension and high blood
pressure, all of which could result in serious consequences from COVID-19.  *See* CDC,
Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions,
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-
medical-conditions.html (last updated Aug. 14, 2020) (providing that people with a BMI
over 30 "are at increased risk of severe illness from COVID-19" and people with
hypertension or high blood pressure "might be at an increased risk for severe illness from
COVID-19").

Mr. Diaz-Diaz has contracted and apparently recovered from COVID-19.  Courts
have split on the issue of whether an individual who has recovered from COVID-19 can
still show extraordinary circumstances.  In *United States v. Molley*, No. CR15-0254-JCC,
2020 WL 3498482, at *2 (W.D. Wash. June 29, 2020), the Court found "we do not know
to what degree or duration persons are protected against reinfection . . . following recovery
from COVID."  *Id*. (citing CDC, *Clinical Questions About COVID-19: Questions and
Answers*, http://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (then last updated June
4, 2020)).  "People could be immune from reinfection entirely, partially, or not at all."  *Id*.
(citing Paul Kellam & Wendy Barclay, *The Dynamics of Humoral Responses Following
SARS-Cov-2 Infection and the Potential for Reinfection*, J. Gen. Virology (May 2020), at
1; Erin Garcia de Jesus, *New Data Suggests People Aren't Getting Reinfected with the
Coronavirus,* Science News (May 19, 2020), http://www.sciencenews.org/article/
coronavirus-COVID-19-reinfection-immune-response; Apoorva Mandavilli, *You May
Have Antibodies After Coronavirus Infection But Not For Long*, N.Y. Times,
https://www.nytimes.com/2020/06/18/health/coronavirus-antibodies.html (then last
updated June 20, 2020)).  Thus, the court concluded the possibility that a defendant might
get re-infected and, the next time around, suffer more severe consequences, was too
speculative to warrant relief.  *Id*.

On the other hand, in *United States v. Yellin*, No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *3 (S.D. Cal. June 26, 2020), the court concluded, "while Mr. Yellin's medical record states he recovered from COVID-19, the possibility of reinfection persists." As the court points out in *Yellin*, the medical evidence is still uncertain as to the effect of a recovery on future infection. Ultimately, the court in *Yellin* concluded: "The Court does not presume to have more information than the experts researching this virus. Without scientific conclusions as to whether reinfection is possible or how long COVID-19 immunity lasts, the Court must err on the side of caution to avoid potentially lethal consequences for Mr. Yellin." *Id.*

As this Court pointed out in *United States v. Armstrong*, No. 18-cr-5107-BAS, 2020 WL 4366015, at *3 (S. D. Cal. July 30, 2020), the Court finds it particularly persuasive that an inmate, being housed at the same facility as Mr. Diaz-Diaz, was hospitalized and died after he was pronounced "recovered" by the BOP. Whatever the reason for that situation, it makes it clear that simply announcing that an inmate has "recovered" does not mean that Mr. Diaz-Diaz is completely safe from the virus. Given the high level of infection at Terminal Island, and Mr. Diaz-Diaz's pre-existing conditions, the Court finds he has shown "extraordinary and compelling reasons" for his request for release.

## C.    The § 3553(a) Factors

Nonetheless, the Court agrees with the Government that consideration of the § 3553(a) factors in this case militate against granting compassionate release. The offenses Mr. Diaz-Diaz pled to were serious ones. Both the sale of methamphetamine and the unlicensed sale of firearms have the potential to wreak havoc on our society.

Furthermore, Mr. Diaz-Diaz's criminal record, despite his young age, reflects violence, recidivism and the commission of offenses while on probation, reflecting an unwillingness or inability to follow the rules of the Court. As the Probation Department noted at the time of sentencing, Mr. Diaz-Diaz is a high risk for recidivism "and may pose a risk to the safety of others in the community." (PSR ¶ 124.)

Mr. Diaz-Diaz offers evidence that he has done well in prison. (Defendant's Reply, at 8.) He has remained incident free. The BOP rates his recidivism risk as "Low." Since arrest, he has done everything he can to address his substance abuse problems. He has a release plan. The Court is particularly impressed by the letter from Mr. Diaz-Diaz's case manager who documents that Mr. Diaz-Diaz has completed his GED, maintains employment while in custody and has attempted to enter the RDAP program, which, unfortunately, has been discontinued due to the pandemic. Although the Court applauds Mr. Diaz-Diaz for his efforts and sincerely hopes Mr. Diaz-Diaz has moved in a positive direction towards both sobriety and remaining crime-free, his criminal history up until his arrest leads the Court to conclude that a reduction in sentence is not appropriate.

## III.    CONCLUSION

Because the Court finds the § 3553(a) factors do not support a reduction in Mr. Diaz-Diaz's sentence—despite the fact that he has contracted COVID-19 and has several high risk factors including obesity, hypertension and high blood pressure—the Court **DENIES** Mr. Diaz-Diaz's emergency motion for compassionate release (ECF No. 68).

**IT IS SO ORDERED.**

DATED: September 2, 2020

Hon. Cynthia Bashant
United States District Judge

15cr2982